IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SYSCO OKLAHOMA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-21-116-R |
| | ) | |
| MICHIGAN CONFERENCE OF | ) | |
| TEAMSTERS WELFARE FUND, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>ORDER</u>

Before the Court is the Motion to Dismiss filed by Defendant Michigan Conference Teamsters Welfare Fund (Doc. No. 13). Plaintiff, Sysco Oklahoma, LLC, filed a response in opposition to the motion and Defendant filed a reply in support of its position. (Doc. Nos. 14, 15). Upon consideration of the parties' submissions, the Court finds as follows.

Plaintiff seeks equitable restitution, asserting that it made payments to Defendant Michigan Conference of Teamsters Welfare Fund after properly withdrawing recognition of the Teamsters Local Union No. 886. Plaintiff asserts that it made these overpayments due to a mistake of fact, and that refund is permissible pursuant to 29 U.S.C. § 1103(c)(2)(A)(ii). Specifically, Plaintiff seeks to recoup payments tendered on February 1, 2020 and March 1, 2020, totaling $304,510.78. These payments were made to the Fund pursuant to a Participation Agreement and a Collective Bargaining Agreement between Plaintiff and the Union. The parties' agreement was accepted by the Trustees of the Fund.[1]

---

[1] The issue of Plaintiff's withdrawal of recognition was settled between Plaintiff and Local 886 on July 1, 2020 via settlement of an unfair labor practices charge. Via that agreement "The Union agrees not to appeal the Region's finding that the withdrawal of recognition was lawful." (Doc. No. 1-2, p. 7, ¶ 3).

By letter dated January 23, 2020, Plaintiff informed Defendant Fund that the employees in the bargaining union represented by Local 886 had provided Sysco with a withdrawal of recognition petition indicating they no longer wished to have Union representation, effective immediately.

> With respect to participating in the Michigan Conference of Teamsters Welfare Fund ("Fund"), and as provided in Paragraph 12(a) of the Participation Agreement, the Company understands it must provide notice to the Fund (with a copy to the Union) that the Company believes the Company no longer has a legal duty to contribute to the Fund; the specific basis upon which the Company's legal duty to contribute to the Fund on behalf of the BU employees is provided above. This correspondence alerts the Fund of the foregoing requested from the Company's BU Employees for the Company to withdraw recognition. As provided in Section 12 of the Participation Agreement and in the interest of continuity, the Company intends to continue making contributions to the Fund on behalf of the BU Employees consistent with the terms of the current Participation Agreement unless or until the Company receives written acknowledgement from the Fund of the cessation of the Company's obligation to contribute to the Fund on behalf of the BU Employees. Please confirm that the Fund will continue to provide coverage to the Company's BU Employees for so long as contributions continue to be made by the Company's to the Fund under the Participation Agreement.

> Please also confirm that, as part of the Fund's acknowledgement concerning cessation of the Company's obligations to the Fund under the Participation Agreement, that the Fund will provide the Company's BU employees with a runout period to enable the Company to smoothly transition the move of the BU Employees covered by the Fund to a Sysco-sponsored health and welfare plan. The Company stands prepared to provide COBRA coverage in the event any BU employee needs it as a result of this transition. Because a majority of BU Employees have requested immediate withdrawal of recognition, the Company's current intent is to implement any transition to a Sysco-sponsored health and welfare plan beginning March 1, 2020.

(Doc. No. 1-5, p. 3). On February 1, 2020, without having received a response from the Fund, Plaintiff tendered payment of $169,158.45. (Doc. No. 1-4).

2

On February 3, 2020, the Fund Executive Director wrote a letter to Sysco in response to Plaintiff's January 23rd letter.

> As you correctly noted, Paragraph 12 of the Michigan Conference of Teamsters Welfare Fund (MCTWF) Participation Agreement provides that Sysco's contribution obligation continues until it provides notice to that it no longer has a legal duty to contribute to MCTWF and MCTWF confirms the cessation of the Company's obligation in writing. Based on the present circumstances, including review of this matter by MCTWF counsel, MCTWF cannot acknowledge cessation of Sysco's contribution obligation at this time because: (i) withdrawal recognition is currently pending before the NLRB and has yet to be resolved; (ii) Sysco may not unilaterally withdraw recognition prior to the expiration of the Collective Bargaining Agreement; and (iii) even if the petition to withdraw is deemed valid and brings to an end the collective bargaining process, MCTWF's rights are unaffected pursuant to the Collective Bargaining Agreement and the Participation Agreement, as well as with the relevant case law.

(Doc. No. 14-1, p. 5). The Director further stated, "Sysco's contribution obligation to MCTWF continues regardless of whether Sysco withdraws recognition of Local 886." *Id.* He responded to Plaintiff's inquiry, stating, "[i]n respect to your question as to continued coverage, assuming appropriate contributions continue to be made, coverage will be provided in accordance with MCTWF participation rules" and demanded that Sysco confirm whether it intended to fulfill its obligations. (*Id.* at p. 6).

On February 18, 2020, Plaintiff's counsel wrote to the trustees of the Plan, asking that the "Board of Trustees review and resolve the question as to whether Sysco Oklahoma continues to have a legal duty to contribute to the Trust Fund." (Doc. No. 14-1, p. 8). Plaintiff reiterated that its employees had submitted a petition indicating a desire that the union no longer represent them. "It is Sysco Oklahoma's position that the withdrawal of recognition of the Local Union by **both** the BU Employees and by Sysco Oklahoma means

3

that Sysco Oklahoma no longer has a legal duty to contribute to the Trust Fund." *Id.* at p. 9. "The continued, uninterrupted provision of benefits to Sysco Oklahoma's employees is of paramount importance. The uncertainty underlying this continued coverage issue is causing confusion and stress to Sysco Oklahoma's BU Employees." *Id.* at pp. 9-10. Plaintiff requested a quick response and an indication of when the Trustees would act.[2]

The Fund responded via email on February 27, 2020, indicating that the Trustees would hear the issue on March 5, 2020 and that Plaintiff's counsel would be informed of the result no later than March 6, 2020. (*Id.* at p. 12). "Notwithstanding the foregoing, Sysco Oklahoma has a contractual duty to remit contributions on behalf of its Teamster bargaining unit employees for the month of March, for receipt by MCTWF by 03/01/20. Its failure to comply will subject it to enforcement of MCTWF's delinquency rules." *Id.* Plaintiff submitted the March 2020 payment as scheduled on March 1, 2020.

After settlement of the underlying unfair labor practices claim, Plaintiff's counsel wrote to the Trustees of the Defendant Fund seeking a refund of the money deposited in February and March 2020. The letter noted that when the payments were made the employees were no longer represented by the Local Union. "Because the employees to whom the Overcontribution relates were not represented by the Local Union, the Overcontribution was a 'bona fide erroneous payment or overpayment of contributions'

---

[2] Article IV Section 1 of the Participation Agreement provides

> An Employer's obligation to contribute to the Trust at the rate for each Benefit Plan established by the Trustees continues until the Employer notifies the Trustees by certified mail, with a copy to the Local Union, that the Employer no longer has a legal duty to contribute to the Trust, and the Trustees acknowledge the termination in writing. The Employer shall set forth in the written notice the specific basis upon which its legal duty to contribute to the Trust has terminated.

Doc. No. 1-6, p. 11.

within the meaning of Article VIII, Section 5 of the Trust Fund's Agreement and Declaration of Trust as revised through November 6, 2014 (the "Trust Agreement).[3] (Doc. No. 1-7, p. 2). The response from the Fund came on August 17, 2020 via email, "[y]our client has no legal basis for a refund of contributions made for the month of March 2020. No refund will be made." (Doc. No. 1-8, p. 2). A letter sent by Plaintiff's counsel on February 10, 2021 similarly requesting a refund was ignored by the Fund, precipitating the instant litigation.

The parties agree that under certain circumstances an employer may seek equitable restitution of overpayments to a health and welfare benefit plan under the federal common law. Defendant contends, however, that dismissal is appropriate in this case, because even accepting as true any well-pled facts in the Complaint, Plaintiff has failed to state a claim for relief.[4]

The Court's role in assessing a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. For*

---

[3] Article VIII, Section 5 of the Participation Agreement provides:

In no event shall any Employer directly or indirectly receive any refund of contributions made by it to the Trust (except in the case of a bona fide erroneous payment or overpayment of contributions, as permitted under ERISA) nor shall an Employer directly or indirectly participate in the disposition of the Trust, including, without limitation, any reserves of the Trust, or receive any benefits from the Trust.

[4] The parties also agree there is no Tenth Circuit authority directly on point.

*the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted). "[A] complaint must contain enough allegations of fact to state a claim for relief that is plausible on its face." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations" (quoting *Twombly*, 550 U.S. at 556)).

In response to the motion to dismiss, Plaintiff appended certain communications between the parties. Defendant, in its Reply, asserts that it has no objection to the Court's consideration of these documents that are referenced in the Complaint and central to Plaintiff's equitable restitution claim.

> Generally, a district court must convert a motion to dismiss into a motion for summary judgment when matters outside the pleadings are relied upon. Fed. R. Civ. P. 12(b); *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991). A motion to dismiss considers the conduct alleged in the complaint, whereas a motion for summary judgment considers the evidence (or lack thereof) upon which the allegations are based. *Bell v. Fur Breeders Agric. Coop.*, 348 F.3d 1224, 1230 (10th Cir. 2003). We have recognized however, that a document central to the plaintiff's claim and referred to in the complaint may be considered in resolving a motion to dismiss, at least where the document's authenticity is not in dispute. *County of Santa Fe v. Pub. Serv. Co. of N.M.*, 311 F.3d 1031, 1045 (10th Cir. 2002); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

*Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253–54 (10th Cir. 2005). The Court, relying on the Defendant's contention that it has no objection to the authenticity of the documents, has relied on them in consideration of the instant motion.

A majority of federal circuits that have considered the issue of restitution for mistaken overpayments have concluded that such a cause of action exists in the federal common law, including cases involving employers and overpayment to health and welfare plans.[5] *See Kwatcher v. Massachusetts Serv. Emps. Pension Fund,* 879 F.2d 957, 966 (1st Cir. 1989) ("We therefore rule that federal courts may award restitution to employers in ERISA cases where principles of equity make such an award appropriate"), a*brogated on other grounds by Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1 (2004).; *Frank L. Ciminelli Const. Co. v. Buffalo Laborers Supplemental Unemployment Ben. Fund,* 976 F.2d 834, 835 (2d Cir. 1992)("[W]e have also held that an employer is entitled to repayment if it shows that the refusal to repay was arbitrary or capricious and 'the equities favor restitution.'")(citation omitted); *Plucinksi v. I.A.M. Nat'l Pension Fund*, 875 F.2d 1052, 1057-58 (3d Cir. 1989)(employer has no statutory right to recover funds mistakenly paid to pension plan but may recover funds under federal common law under certain conditions); *Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985, 993 (4th Cir.1990) (recognizing that "several courts have cited to § 1103(c)(2)(A) in creating a common law remedy for employers in their suits to recover erroneous payments to pension funds"); *Whitworth Bros. Storage Co. v. Central States, Southwest and Southwest Areas*

---

[5]  The Ninth Circuit Court of Appeals recognizes an implied cause of action by an employer under 29 U.S.C. § 1103(c)(2)(A), section § 403(c)(2) of the Employee Retirement Income Security Act ("ERISA"). *British Motor Car Distrib., Ltd. v. San Francisco Auto. Indus. Welfare*, 882 F.2d 371, 374 (9th Cir. 1989). The Act provides that assets of an ERISA plan "shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C.§ 1103(c)(1). There exists an exception to this general rule, which permits, but does not mandate, the return of an employer's plan contribution that was the result of "a mistake of fact or law," but only "after the plan administrator determines that the contribution was made by such a mistake." Id. § 1103(c)(2)(A)(ii).

*Pension Fund*, 794 F.2d 221, 235-36 & nn. 23-24 (6th Cir. 1986) (An action for unjust enrichment, equitable in nature, and developed in light of the policies of ERISA is appropriate"); *UIU Severance Pay Trust Fund v. Local Union No. 18-U, United Steelworkers of Am.*, 998 F.2d 509, 512 (7th Cir. 1993)(Union could seek recovery of unauthorized contributions under federal common law); *Young Am. Inc. v. Union Cent. Life Ins. Co.*, 101 F.3d 546, 548 (8th Cir. 1996)(citing *UIU Severance Fund*).

An employer seeking equitable restitution must establish that it: (1) paid contributions to the Fund that it was not obligated to pay; (2) that these contributions were the result of a mistake of law or fact; (3) it requested that the Fund return the payments; (4) which request the Fund denied; and (5) the Fund's denial was arbitrary and capricious. *See e.g. Trustees of Painters Union Deposit Fund v. Interior/Exterior Specialist, Co*., No. 05-70110, 2008 WL 724355, at *21 (E.D. Mich. Mar. 18, 2008), *aff'd*, 371 F. App'x 654 (6th Cir. 2010). Additionally, the equities must favor refund. *See Operating Eng'rs Local 139 Health Benefit Fund v. Gustafson Constr. Corp*., 258 F.3d 645, 651 (7th Cir. 2001) ("[M]erely because a payment is made by mistake doesn't give the payor an automatic right to the return of the payment.").

Accepting as true Plaintiff's well pled factual allegations, the Court finds that Plaintiff has failed to sufficiently allege facts to support its contention that it made the February 1, 2020 payment to the Trust Fund because of a mistake of fact or law. Plaintiff's January 23, 2020 letter specifically indicates that Sysco Oklahoma intended to submit payment on February 1, 2020 to ensure continued coverage to its bargaining unit employees. The clear terms of the letter support only one inference, that Sysco anticipated

8

that it would initiate its own health and welfare plan on March 1, 2020 and an acknowledgment that it could not continue coverage without payment. At bottom, there are no facts pled that would lead the Court to conclude that Sysco Oklahoma, LLC made the February 1, 2020 payment under mistake of fact or law.[6]

The Court finds the analysis with regard to the March 1, 2020 payment a closer call. Plaintiff alleges in the Complaint it tendered the payment because of the statements contained in the letters sent by the Defendant Fund in February 2020 threatening that failure to tender the payments could result in an action under ERISA for the unpaid contributions. The Court does not construe these allegations as asserting a mistake of fact or law. The federal common law claim is subject to the contours of the ERISA statute, which does not define mistake.

> The facts recited above establish that Sysco Oklahoma operated under a good-faith mistake of fact in its payment of contributions to the Fund following the decertification of the union on January 19, 2020. Its mistake of fact in making these contributions was engendered by the Fund's assertion that it was entitled to these contributions despite Sysco Oklahoma's notice of decertification and its strong implication that it would initiate a contribution collection action if the contributions were not made. Sysco paid the contributions in reliance on the Fund's threatened collection action.

(Doc. No. 1, ¶ 22).[7] The Court interprets the allegations of the Complaint as asserting that Plaintiff made the March 1, 2020 contribution not because it believed that it owed the money under the CBA or the Participation Agreement, but because it feared that if its

---

[6] Although not raised by Defendant, Rule 9(b) of the Federal Rules of Civil Procedure requires that mistake, like fraud, be pled with particularity.

[7] Plaintiff presents no allegations of any communication received from the Fund prior to its February 1, 2020 payment. Additionally, although Plaintiff's Complaint alleges mistake of fact, its response to the motion to dismiss also relies on mistake of law.

interpretation was incorrect, Defendant would seek relief under 29 U.S.C. § 1132(g)(2) for unpaid contributions for the month, which includes interest, liquidated damages, and attorneys fees.

Had Plaintiff asserted that it made a mistake in believing it owed the money when indeed it did not, the Court would find the allegations sufficient to allege a mistake. However, Plaintiff's allegations are that it paid under protest, not out of a mistaken belief that the money was owed.

> Mr. Llamas claimed at trial that he did not believe IES was bound by the CBA. at the time he agreed to make the payments. Mr. Llamas did not argue he believed IES was obligated by law to make the payments it now seeks to recover. Despite the availability of a claim under federal common law for restitution of ERISA overpayments, trial made clear that Mr. Llamas paid these benefits on behalf of IES under protest, not because of a "mistake" of fact or law.

*Trustees of Painters Union Deposit Fund*, 2008 WL 724355 at *21. Thus, regardless of whether Plaintiff seeks to proceed under a theory that it made the payments due to a mistake of fact or law, its allegations do not support either. Plaintiff's claims and the letters it submits support only a single conclusion, that it believed its obligation had ended with termination of the Union's representation in January 2020. Plaintiff asserts that it submitted the March 1, 2020 payment out of fear that Defendant would file an action seeking to compel it to make the necessary contributions, not that its payment was the result of a mistake. These allegations preclude Plaintiff's claim from proceeding.[8]

---

[8]  At page 2 of its brief Plaintiff requests that the Court permit discovery to proceed or "[a]lternatively, the Court should permit amendment of the Complaint." (Doc. No. 14, p. 6). The prudent course of conduct for a party seeking leave to amend is to comply with Local Rule of Procedure 15, which mandates that a party seeking leave to amend provide the Court with a proposed amended complaint. The request set forth at page 2 is denied.

For the reasons set forth herein, Defendant's Motion to Dismiss is GRANTED.

**IT IS SO ORDERED** this 23rd day of August 2021.

**DAVID L. RUSSELL**
**UNITED STATES DISTRICT JUDGE**